# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM SARFARZI-ESFAHARI, | Case No. 1:25-cv-00774-JLT-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |
| v. | |
| RON MURRAY, et al., | |
| Respondents. | (ECF No. 31) |

Petitioner, represented by counsel, is a federal immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the first amended petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a citizen of Iran who fled with his mother because they feared persecution in Iran after the revolution. (ECF No. 33 at 3.[1]) Petitioner came to the United States on June 24, 1987, when he was three years old. In 2000, Petitioner became a permanent resident through his mother's petition. (ECF No. 33 at 4; ECF No. 38-3 at 4.) In 2003, Petitioner was convicted of first-degree residential burglary, and he was sentenced to an imprisonment term of three years

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

and four months. (ECF No. 33 at 4; ECF No. 38-4 at 2.) On July 8, 2004, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") before an Immigration Judge ("IJ") for detained removal proceedings. (ECF No. 38-3.) On October 8, 2004, an IJ ordered Petitioner removed from the United States to Iran but granted deferral of removal under Article III of the Convention Against Torture ("CAT"). (ECF No. 38-5.)

On January 21, 2005, Petitioner was released from DHS custody on an order of supervision ("OSUP") because his removal had not been effectuated during the period prescribed by law. (ECF No. 38-6.) In 2019, Petitioner was convicted of driving under the influence and sentenced to 180 days in jail. (ECF No. 38-7.)

Petitioner petitioned and successfully vacated the first-degree burglar conviction, the sole conviction that made him removable, and Governor Newsom granted Petitioner's petition for a pardon. (ECF No. 33 at 5, 30–31, 35.) Thus, on February 26, 2025, Petitioner filed a notion to reopen and a motion to terminate his removal proceedings with the immigration court. The IJ denied both motions. (ECF No. 33 at 5; ECF No. 38-8; ECF No. 38-9.) On April 25, 2025, Petitioner appealed the IJ's denial of his motion to reopen with the Board of Immigration Appeals ("BIA"). (ECF No. 33 at 5; ECF No. 38-11.) The BIA remanded the matter back to the IJ. (ECF No. 33 at 5; ECF No. 38-12.) The IJ denied the motion to reopen a second time, and Petitioner filed an appeal on December 22, 2025. (ECF No. 33 at 5.)

Meanwhile, on June 22, 2025, U.S. Immigration and Customs Enforcement ("ICE") called Petitioner and told him to report to the Fresno Field Office the following day. Petitioner's attorney accompanied Petitioner to the appointment. Officers instructed Petitioner's attorney to leave and that the attorney was not permitted to be present for any questioning or interview. Officers informed Petitioner that he was being detained, but Petitioner was not provided any paperwork at that time. Before Petitioner was transferred to Mesa Verde ICE Processing Center, Petitioner was "given a packet with four pieces of paper: (1) a revocation notice;[2] (2) a warrant

---

[2] The notice of revocation of release was dated June 23, 2025, and signed by Assistant Field Director David Torrez Jr. (ECF No. 33 at 37.) The notice states that "[t]his decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case," namely that "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you." (ECF No. 33 at 37.)

for removal; and (3) an informal alien interview notice." (ECF No. 33 at 5.) While in custody in Fresno, Petitioner was questioned by officers in an "internal interview," and was told that his order of supervision was revoked based on a determination that Petitioner could be expeditiously removed pursuant to his final order of removal. Petitioner was informed that his deportation officer would have more information once Petitioner got to Mesa Verde. (ECF No. 33 at 6.)

On June 26, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 3, 4.) On July 1, 2025, the assigned district judge held a hearing on the motion for TRO and granted Petitioner's request to file an amended motion for TRO. (ECF No. 17.) After various stipulations to continue briefing deadlines and hearing dates, Petitioner filed a first amended petition ("FAP") on December 26, 2025. (ECF No. 31.) On January 6, 2026, ICE issued a second notice of revocation of release, which appears to be identical to the June 23, 2025 notice in substance with the exception that the January 6, 2026 notice is signed by Acting Field Office Director Orestes L. Cruz. (ECF No. 38-19 at 2.) On January 14, 2026, Respondents filed a response to the petition. (ECF No. 38.) On January 16, 2026, Petitioner filed a reply. (ECF No. 39.)

**II.**

**DISCUSSION**

In the FAP, Petitioner raises the following claims for relief: (1) unlawful revocation of OSUP without due process violates the Fifth Amendment and 8 C.F.R. §§ 241.4(*l*)(1), (2), (3) and 241.13(i)(1), (2), (3); (2) unlawful revocation of OSUP and re-detention violates the Administrative Procedure Act ("APA"); (3) Respondents' third country removal policy violates due process and governing law; and (4) prolonged detention violates due process under Zadvydas v. Davis, 533 U.S. 678 (2001). (ECF No. 31 at 5–7.)

**A. Jurisdiction**

1. 8 U.S.C. § 1252(g)

Respondents argue that "8 U.S.C. § 1252(g) categorically bars jurisdiction over '*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [DHS] to *commence proceedings*, adjudicate cases, or execute removal orders against any alien'" and thus,

3

"DHS's decision to *commence removal proceedings*, including the decision to detain an alien pending such removal proceedings, squarely falls within this jurisdictional bar." (ECF No. 28 at 10 (emphasis in original) (quoting 8 U.S.C. § 1252(g)).)

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "[T]he express instructions of the Supreme Court, our precedent, and common sense . . . require us to read the statute narrowly." Arce v. United States, 899 F.3d 796, 800 (9th Cir. 2018). "Though 8 U.S.C. § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to 'commence proceedings, adjudicate cases, or execute removal orders against any alien,' . . . the central issue is Petitioner's continued detention. Thus, this Court has the authority to review the termination of Petitioner's release." Hernandez-Castro v. Lyons, No. 1:25-cv-01574 JLT SAB, 2025 WL 3771344, at *3 (E.D. Cal. Dec. 31, 2025). See Zadvydas, 533 U.S. at 687–88 (noting that "Congress has enacted several statutory provisions that limit the circumstances in which judicial review of deportation decisions is available," including § 1252(g), but finding "none applies" and "conclud[ing] that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); Y.T.D. v. Andrews, No. 1:25-cv-01100 JLT SKO, 2025 WL 2675760, at *5 (E.D. Cal. Sept. 18, 2025) ("Though 8 U.S.C. § 1252(g), precludes this Court from exercising jurisdiction over the executive's decision to 'commence proceedings, adjudicate cases, or execute removal orders against any alien,' this Court has habeas jurisdiction over the issues raised here, namely the lawfulness of his continued detention and the process required in relation to third country removal."); Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *3 (W.D. Wash. Dec. 19, 2025) ("Arenado-Borges challenges the revocation of his OSUP and indefinite detention—not his removal order. His petition thus falls outside of Section 1252(g)."). Accordingly, the undersigned recommends

finding that 8 U.S.C. § 1252(g) does not bar jurisdiction over Petitioner's claims.

   2.   8 U.S.C. § 1252(b)(9)

Respondents also argue that this Court lacks jurisdiction pursuant to 8 U.S.C. § 1252(b)(9). (ECF No. 38 at 11–12.) Section 1252(b)(9) is "a 'zipper clause' that consolidates all 'questions of law and fact ... arising from any action taken or proceeding brought to remove an alien' into a petition for review" in the court of appeals. Martinez v. Napolitano, 704 F.3d 620, 622 (9th Cir. 2012) (quoting 8 U.S.C. § 1252(b)(9)). "The 'arising from' language appears broad, but the Supreme Court has cautioned against an 'expansive' interpretation of § 1252(b)(9) that would lead to 'absurd' results and make certain claims 'effectively unreviewable.'" Ibarra-Perez v. United States, 154 F.4th 989, 1000 (9th Cir. 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 293 (2018)). Although it "might seem draconian at first glance," "importantly, § 1252(b)(9) has built-in limits." J.E.F.M. v. Lynch, 837 F.3d 1026, 1031, 1032 (9th Cir. 2016). "[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." Id. at 1032. Thus, the Ninth Circuit has held that "an immigrant could challenge his . . . administrative detention by filing a petition for a writ of habeas corpus in district court, notwithstanding § 1252(b)(9)." Id. (citing Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006)). See Arenado-Borges, 2025 WL 3687518, at *3 ("Arenado-Borges challenges the revocation of his OSUP and indefinite detention—not his removal order. His petition thus falls outside of Section 1252(g). The Government's reliance on Section 1252(a)(5) and (b)(9), fares no better. Those sections apply 'only to those claims seeking judicial review of orders of removal.'" (citation omitted) (quoting Singh v. Gonzales, 449 F.3d 969, 978 (9th Cir. 2007))). Courts have also found that § 1252(b)(9) does not bar consideration of claims challenging the government's third country removal policy. See, e.g., D.V.D. v. U.S. Dep't of Homeland Sec., 778 F. Supp. 3d 355, 376 (D. Mass. 2025). ("As Defendants initiated the third-country-removal process at issue *after* the conclusion of removal proceedings—and because Plaintiffs have no opportunity to raise these issues before an IJ without some type of advance notice—there can be no judicial review as contemplated in the channeling provisions of section 1252(a)(4).... As such, neither section 1252(a) nor section 1252(b) bars this Court's jurisdiction."). Accordingly, the

undersigned recommends finding that 8 U.S.C. § 1252(b)(9) does not bar jurisdiction over Petitioner's claims.

### B. Revocation of Order of Supervision

In his first claim for relief, Petitioner challenges the revocation of his OSUP on due process grounds. (ECF No. 31 at 5–6.) Petitioner asserts that Respondents have not sustained their burden to show a change in circumstances, the OSUP was not revoked by a designated official, and Petitioner's informal interview was a sham. (ECF No. 37 at 17–21.)

"Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X. v. Lyons, No. 1:25-cv-01412-KES-CDB (HC), 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). 8 C.F.R. § 241.13(i) provides in pertinent part:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(1)–(3).

6

8 C.F.R. § 241.4(b)(4) provides:

> Service determination under 8 CFR 241.13. The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). With regard to revocation, 8 C.F.R. § 241.4(*l*) provides in pertinent part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> > (i) The purposes of release have been served;
> > (ii) The alien violates any condition of release;
> > (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> > (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(1)–(2).

### 1. Change of Circumstances

Petitioner asserts that "Respondents have not established a 'change in circumstances' under 8 C.F.R. § 241.4(*l*)(1), (2) or 8 C.F.R. § 241.13(i)(1) or (2)." (ECF No. 37 at 17.) Respondents argue that "because DHS determined there is a *significant likelihood* that Petitioner

will be removed *in the near future*, his redetention is permitted. (ECF No. 38 at 13 (emphasis in original).)

The "regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in [Petitioners'] situation and outline the process to be followed," including that "when ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" Yan-Ling X., 2025 WL 3123793, at *3, 4 (second alteration in original) (quoting Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025)) (citing Roble v. Bondi, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future.")); Abuelhawa v. Noem, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F. Supp. 3d 144, 150 (D. Mass. 2025)

The only evidence provided by Respondents that touches upon this issue are the January 6, 2026 notice of revocation of release and a declaration of a deportation officer. The notice of revocation of release states in pertinent part:

> This letter is to inform you that your order of supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.
>
> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On October 18, 2004, you were ordered removed to Iran by an Immigration Judge, and therefore, you are subject to an administrative final order of removal. On January 21, 2005, you were released on Order of Supervision pending removal. You will be held in ICE ERO custody, as there is a significant likelihood of removal in the reasonable future.
>
> . . .
>
> You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you by taking

whatever actions ICE requests to affect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 U.S.C. Section 1253(a).

(ECF No. 38-19 at 2.) The declaration of the deportation officer states: "ERO [Enforcement and Removal Operations] is actively pursuing SARFARZI-ESFAHANI's removal to a third country. As of the date of this declaration, SARFARZI-ESFAHANI's removal has not been scheduled." (ECF No. 38-2 at 4.)

Respondents do not provide any further details ERO's efforts nor attempt to identify any third country that is willing to accept Petitioner. "Respondents' [implied] intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance" that makes removal significantly likely in the reasonably foreseeable future. Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (alterations added) (citing Liu v. Carter, No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. Jun. 17, 2025)). See Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025) (finding "general assertion that ICE is 'mak[ing] efforts' to obtain travel documents for petitioner . . . not compelling" because "Respondents do not identify any specific efforts they have made to obtain a travel document from Vietnam for petitioner, much less whether they have any indication from Vietnam that it is likely to issue such a travel document").

Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future as required by 8 C.F.R. § 241.13(i).[3] "[W]here an immigration regulation is promulgated to protect

---

[3] To the extent Respondents argue that Petitioner's "re-detention would also have been justified based on his subsequent arrest and violation of release terms, which discredit his current claim that he complied with all conditions of release," (ECF No. 38 at 13), the Court finds such argument unpersuasive because as noted by Petitioner, Petitioner's 2019 DUI conviction as a rationalization for re-detention was "raised for the first time in litigation" and "was not cited as a basis for revoking supervision in either notice and was known to DHS for years without prompting revocation," (ECF No. 39 at 10). "[T]his post-hoc rationalization cannot form the basis of 'changed circumstances' for the purpose of re-detention." Arostegui-Campo v. Noem, No. 25-CV-3064 JLS (MMP), 2025 WL 3280886, at *4 (S.D. Cal. Nov. 25, 2025).

a fundamental right derived from the Constitution or a federal statute and ICE fails to adhere to it, the challenged action is invalid." Huang v. Albarran, No. 1:25-CV-01308 JLT EPG, 2026 WL 145631, at *7 (E.D. Cal. Jan. 20, 2026) (quoting Yan-Ling X., 2025 WL 3123793, at *6). "Here, DHS's failure to follow its own procedural regulations constitutes a due process violation" because "ICE re-detained Petitioner without complying with 8 C.F.R. § 241.13(i)(2)[.]" Huang, 2026 WL 145631, at *7.

Accordingly, the undersigned recommends finding that Petitioner's re-detention was unlawful and his immediate release from custody is warranted.[4] See Nguyen, 788 F. Supp. at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu, 2025 WL 1696526, at *3 ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 2025 WL 3123793, at *7 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante.").

2. Pre-Deprivation Hearing

The FAP requests that if the government chooses to re-detain Petitioner, the Court order Respondents "to provide advance notice and an opportunity to have a hearing before an Immigration Judge or another independent jurist to determine the lawfulness of re-detention prior to taking the Petitioner into custody." (ECF No. 31 at 7–8.) Respondents argue that a "judicial order imposing such a requirement would improperly interfere with the Executive Branch's authority to remove aliens," and "be at odds with the plain language of 8 C.F.R. § 241.13, which

---

[4] In light of this conclusion, the Court declines to address Petitioner's arguments that the OSUP was not revoked by a designated official and Petitioner's informal interview was a sham, the APA claim, and the Zadvydas claim.

governs determinations of whether there is a significant likelihood of removing an alien in the reasonably foreseeable future and revocation of release, and 8 C.F.R. § 241.1, governing continued detention of inadmissible aliens beyond the removal period." (ECF No. 38 at 17.)

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest." Huang, 2026 WL 145631, at *8 (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025)). Applying the Mathews v. Eldridge, 424 U.S. 319 (1976), factors, the J.L.R.P. court "found that the petitioner was entitled to a bond hearing prior to re-detention because":

> (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs.

Huang, 2026 WL 145631, at *8 (citing J.L.R.P., 2025 WL 3190589, at *9–10). "Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing." Huang, 2026 WL 145631, at *8 (citing Alva, 2025 WL 2419262, at *3–5). Likewise, in Huang, the court found a due process violation where the government detained the petitioner with a final order of removal, released on OSUP for nearly seven and a half years, without a pre-deprivation hearing. Huang, 2026 WL 145631, at *9.

Based on the foregoing, the undersigned recommends finding that "in the event of his re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner's release poses a flight risk or danger to the community." Huang, 2026 WL 145631, at *9 (citing J.L.R.P., 2025 WL 3190589, at *9–10; Alva, 2025 WL 2419262, at *3–5).

**C. Third Country Removal**

In his third claim for relief, Petitioner challenges Respondents' third country removal policy as unlawful and in violation of due process. Petitioner states that "[u]nder the Noem Memo, ICE has taken the position that it will not afford certain noncitizens notice or an opportunity to raise objections or fear-based claims regarding any proposed third-country removal if a travel document is issued." (ECF No. 31 at 7.) Respondents contend that Petitioner's claim is "baseless" because: (1) "this claim is not justiciable because no such country has yet been identified and thus Petitioner lacks standing to assert this claim"; (2) this Court lacks jurisdiction over this claim; and (3) Respondents' third country removal "procedure is statutorily and constitutionally adequate" and "for noncitizens like Petitioner who were never admitted into the United States, 'the Due Process Clause provides nothing more.'" (ECF No. 38 at 20–24 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020)).)

1. Policy

"In recent months, the Government's policy regarding third country removals has shifted substantially. In particular, policy memoranda issued on March 30 [the Noem Memo] and July 9 [the Lyons memo] by DHS have become frequently discussed in similar cases[.]" Escobar v. Chestnut, No. 1:25-cv-01801-DJC-EFB, 2025 WL 3687639, at *2 (E.D. Cal. Dec. 19, 2025).

> The Noem Memo provides two different tracks for removals of noncitizens to third countries, determined primarily by whether the third country in question "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." (Noem Memo at 10). In instances in which the United States "has received such assurances," which the Department of State "believes to be credible," then "the alien may be removed *without the need for further procedures.*" (*Id.* at 10-11) (emphasis added).

> In instances where the United States has *not* received such assurances – or has received assurances but "does not believe them to be credible" – ICE is required to follow a separate procedure. (*Id.* at 11). In those cases, ICE will "inform the alien of removal to that country" but "will not affirmatively ask whether the alien is afraid of being removed to that country." (*Id.*). Only where a noncitizen "affirmatively states a fear of removal" will they be referred to "screening for eligibility for protection under INA § 241(b)(3) and the Convention Against Torture (CAT) for the country of removal." (*Id.*). The Noem Memo provides further guidance as to those noncitizens who *do* affirmatively state a fear

of removal to the third country. (*Id.*). It states that the noncitizen will generally be screened within twenty-four hours, after which USCIS "will determine whether the alien would be more likely than not to be persecuted on a statutorily protected ground or tortured in the country of removal." Where a noncitizen does not meet this standard, they "will be removed." (*Id.*). If the noncitizen meets this standard, then the matter will be referred to Immigration Court. (*Id.*). Where the individual in question "was previously in proceedings before the Immigration Court," the immigration officer will inform ICE, which "may file a motion to reopen with the Immigration Court or the Board of Immigration Appeals, as appropriate, for further proceedings" to determine eligibility for protection under INA § 241(b)(3) or CAT for the country of removal. (*Id.*).

The Lyons Memo was issued in light of the Supreme Court's granting the Government's application to stay the district court's nationwide preliminary injunction in *D.V.D. v. Dep't of Homeland Security*, No. 25-10676, 2025 WL 1142968 (D. Mass. Apr. 18, 2025). (Lyons Memo at 13-14). In short, the Lyons Memos provides that "ICE must adhere to [the Noem Memo]." (*Id.* at 13). It reaffirms that, in instances where the United States has received credible diplomatic assurances that "aliens removed from the United States will not be persecuted or tortured," that the noncitizen "may be removed without the need for further procedures." (*Id.*). It reiterates that, "in all other cases," ICE is to notify the noncitizen of the intended country of removal and "will *not* affirmatively ask whether the alien is afraid of being removed to the country of removal." (*Id.*) (emphasis in original). It further provides that ICE "will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal[,]" but that such removal may be executed after six hours in "exigent circumstances[.]" (*Id.*). Where a noncitizen has not affirmatively stated a fear of persecution or torture "within 24 hours," then ICE "may proceed with removal to the country identified on the notice." (*Id.* at 14). The Lyons memo reiterates the procedure detailed in the Noem Memo for those noncitizens that do affirmatively express a fear of removal to the third country in question. (*Id.*).

Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *1–2 (C.D. Cal. Sept. 26, 2025) (footnotes omitted).

   2.   Standing

   Despite the existence of ICE's written policy, Respondents argue that "[b]ecause the [third] country has not yet been identified and resulting process has not occurred, Petitioner's request is not justiciable" and "Petitioner lacks standing to assert this claim." (ECF No. 38 at 22, 20.) "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an

actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). "Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" Id. at 101–02 (citations omitted). See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) ("[I]n a lawsuit brought to force compliance, it is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" (second alteration in original) quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

> To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate "that he is realistically threatened by a repetition of [the violation]." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). We have "enumerated two ways in which a plaintiff can demonstrate that such injury is likely to recur." *Mayfield,* 599 F.3d at 971. "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Armstrong,* 275 F.3d at 861. "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned ... behavior, violative of the plaintiffs' [federal] rights.'" *Id.* (alterations in original), *quoting LaDuke v. Nelson,* 762 F.2d 1318, 1323 (9th Cir.1985).

Melendres v. Arpaio, 695 F.3d 990, 997–98 (9th Cir. 2012). "While this test is framed in terms of a past harm already experienced, a plaintiff is not strictly required to have *already suffered* a harm in order to seek prospective injunctive relief." Esmail v. Noem, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *5 n.7 (C.D. Cal. Sept. 26, 2025). "Rather, 'the plaintiff must demonstrate that he has suffered *or* is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way.'" Id. (internal quotation marks and citations omitted) (quoting Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007)).

"Where, as here, 'the harm alleged is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future.'" Bates, 511 F.3d at 986 (quoting Armstrong v. Davis, 275 F.3d 849, 861 (9th Cir. 2001), abrogated on other grounds by Johnson

v. California, 543 U.S. 499, 504–05 (2005)). Accordingly, the undersigned recommends finding that Petitioner has standing to bring a claim challenging Respondents' third country removal policy. See Y.T.D., 2025 WL 2675760, at *11 (finding petitioner demonstrated immediacy of injury for purposes of Article III standing regarding third country removal claim where the government was actively working to identify third country of removal but had not attempted such removal); Esmail, 2025 WL 3030589, at *5 ("The Court is satisfied that, as a noncitizen with a removal order – who is, therefore, inherently subject to the policies articulated in the Noem and Lyons Memos – Petitioner has sufficiently demonstrated 'that he is realistically threatened by a repetition of the violation' at issue." (footnote and some internal quotation marks and citations omitted)).

   3. Jurisdiction

  Respondents argue that this Court lacks jurisdiction over Petitioner's third country removal claim pursuant to 8 U.S.C. § 1252(a)(4), the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") and 8 U.S.C. §§ 1252(a)(4), (b)(9), and (g). As set forth in section II(A), *supra*, 8 U.S.C. §§ 1252(b)(9) and (g) do not strip this Court of jurisdiction.

  With respect to 8 U.S.C. § 1252(a)(4) and FARRA, courts have found that they do not bar a habeas court's jurisdiction over a petitioner's claims challenging third country removal. See, e.g., D.V.D., 778 F. Supp. 3d at 376 ("As Defendants initiated the third-country-removal process at issue *after* the conclusion of removal proceedings—and because Plaintiffs have no opportunity to raise these issues before an IJ without some type of advance notice—there can be no judicial review as contemplated in the channeling provisions of section 1252(a)(4).... As such, neither section 1252(a) nor section 1252(b) bars this Court's jurisdiction."); Ortega v. Kaiser, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) (finding "FARRA, by its plain language, does not bar this Court's [habeas] review" where petitioner "does not seek review of 'the regulations adopted to implement' CAT or 'claims considered under' CAT" but "[i]nstead, he asks not to be detained or removed without first receiving due process as to any CAT claim he might have for a third country to which the Government seeks his removal"); Santamaria Orellana v. Baker, No. CV 25-1788-TDC, 2025 WL 2841886, at *8 (D. Md. Oct. 7,

2025) ("Here, Santamaria Orellana has CAT withholding in relation to El Salvador and is seeking IJ review of his claim that he has a reasonable fear of removal to Mexico. In the Petition, however, he does not seek review of any determination by an IJ or the BIA pursuant to CAT; rather, he seeks only the opportunity to have an IJ hear his reasonable fear claim that may be based on CAT. The Court therefore does not find that he is seeking judicial review of a claim under CAT for purposes of § 1254(a)(4) or FARRA § 2242(d).").

Accordingly, the undersigned recommends finding that the Court has jurisdiction to address Petitioner's third country removal claim.

### 4. Due Process

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673 (2025) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). To the extent Respondents rely on the entry fiction doctrine to argue that the "March 2025 guidance is the political branches' reasoned judgment as to what process should be afforded under CAT before a noncitizen is removed to a third country, and for noncitizens like Petitioner who were never admitted into the United States, 'the Due Process Clause provides nothing more[,]'" (ECF No. 38 at 24), the Court finds such argument unpersuasive. Respondents "ask the Court to extract from Thuraissigiam a broad rule that any inadmissible noncitizen possesses only those due process rights afforded to them by statute, regardless of the nature of their status or the relief they seek. But such a conclusion is untethered to the claim in Thuraissigiam and the Court's reasoning. Thuraissigiam's discussion of due process is necessarily constrained to challenges to admissibility to the United States." Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023), appeal filed, No. 24-2801 (9th Cir. argued May 21, 2025). See Castillo v. Wofford, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding Thuraissigiam "inapposite and reject[ing] Respondents' argument that 'entry fiction' cases guide the analysis for cases not involving an expedited removal process").

"[A] basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the

opportunity to prepare and present relevant arguments and evidence." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999). Thus, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian, 180 F.3d at 1041. Accord Ibarra-Perez, 154 F.4th at 995 ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting Andriasian, 180 F.3d at 1041)).

Respondents' policy, as set forth in the Noem and Lyon memos, "contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy." Nguyen, 796 F. Supp. 3d at 728 (citations omitted). See Vu, 2025 WL 3114341, at *9 ("ICE's policy is contrary to Ninth Circuit precedent."). Accordingly, the undersigned recommends finding that Petitioner is entitled to habeas relief on this ground.

**III.**

**RECOMMENDATION**

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The first amended petition for writ of habeas corpus (ECF No. 31) be GRANTED on the first and third claims for relief.

2. Respondents be directed to immediately release Petitioner from custody under the conditions of his most recent order of supervision.

3. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

///

4. Respondents be enjoined and restrained from removing Petitioner to a third country without an individualized opportunity to assert his fear of removal to said country.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 26, 2026**             /s/ Erica P. Grosjean
                                          UNITED STATES MAGISTRATE JUDGE